**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

**Plaintiff,**

**v.**

**YAS CARIBE, INC., d/b/a FARMACIA CARIMAS, et al.,**

**Defendants,**

**Civ. No. 24-1449 (ADC)**

**OPINION AND ORDER**

## I. Introduction and Procedural Background

The plaintiff in this case, the United States Equal Employment Opportunity Commission ("EEOC"), filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against defendants Yas Caribe Inc. d/b/a Farmacia Carimas ("FC#1"), Interamerican Unlimited Drug Inc. d/b/a Farmacia Carimas 2 ("FC#2"), and Al-Teen, Corp. d/b/a Farmacia Carimas 3 ("FC#3, and together with FC#1 and FC#2, "Defendants"), for allegedly subjecting Ms. Jaraitza Wilkerson-Pérez ("Ms. Wilkerson") to a hostile work environment and constructive discharge based on her sex. **ECF No. 1**. The allegations are that the manager of defendants' three "Farmacias Carimas" establishments, Khalid Yassin (who is also the nephew of defendants' owner, president, and secretary, Abdullah Yassin), engaged in sexually charged conduct towards and committed battery against Ms. Wilkerson three weeks into her employment with

defendants. *Id.*, at ¶¶ 35-37. The EEOC seeks to recover compensatory and punitive damages as well as permanent injunctive relief. *Id.*, at ¶¶ 49-53.

During the course of discovery, the EEOC propounded several requests for production of documents under Fed. R. Civ. P. 34 and interrogatory requests under Fed. R. Civ. P. 33. Defendants produced documents and answers, but not to the EEOC's satisfaction. After conferring with defendants on September 17 and 19, 2025, and attempting to resolve the dispute without judicial intervention, the EEOC filed a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3)(B) on November 25, 2025. **ECF No. 23**. Defendants responded and maintained most of their objections, but also stated their willingness to supplement their production and responses to several compelled requests. **ECF No. 26**. On March 6, 2026, the Court ordered the EEOC to update it on the status of its requests given defendants' position. **ECF No. 36**. The EEOC complied and submitted a status report, **ECF No. 40**, to which defendants filed a response, **ECF No. 43**. In compliance with an Order from this Court, the EEOC submitted copies of its discovery requests and of defendants' responses and objections. **ECF Nos. 45, 46**.

A second discovery dispute arose on May 1, 2026, when the EEOC filed a motion to reopen discovery as to defendants' employee manual and requested a targeted forensic inspection of relevant computer systems and custodians. **ECF No. 47**. The EEOC argued that defendants belatedly produced a revised copy of their employee manual after the close of discovery; one that, contrary to the originally produced version, includes Abdullah Yassin as "a point of contact and telephone number for complaints of sexual harassment," which may serve

to support one of defendants' affirmative defenses. *Id.*, at 1. The EEOC contends that the surprise production of this document not only contradicts defendants' prior discovery responses and sworn testimony, but also prejudices it because it must now seek discovery on the circumstances of the document's creation. *Id.*, at 2. On May 14, 2026, defendants responded by pointing to deposition transcript excerpts that purportedly explain away the EEOC's allegations of surprise and contradiction. **ECF No. 48** at 1-2. Defendants further protested that allowing a forensic inspection of its computer systems is unnecessary and would expose private, non-party customer health information to unauthorized disclosure. *Id.*, at 2-3.

What follows is a somewhat lengthy Opinion, which the Court deemed prudent to write in order to reaffirm the duties incumbent on parties and their attorneys during the discovery process, especially in the context of electronic discovery. And so, for the reasons set forth below, the EEOC's motion at **ECF No. 23** is **GRANTED IN PART, DENIED IN PART**.

## II. Legal Standard

The scope of discovery in federal civil proceedings is governed by Rule 26(b) of the Federal Rules of Civil Procedure. Generally, the scope of permissible discovery extends to:

> . . . any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b). The main criteria are thus privilege, relevance, and proportionality, with the ensuing list of factors informing the analysis of whether proportionality is met in any given case.

Early on in litigation, parties are required to confer and prepare a discovery plan. Fed. R. Civ. P. 26(f)(3). That plan must include the parties' views and proposals on several matters, among them: the subjects, sequence, and timing of discovery; the production of electronically stored information ("ESI"); any possible claims of privilege or work-product protection; and any limitation on discovery that would go beyond those included in the Rules. *Id.*

Apart from the mandatory initial disclosures required by Rule 26(a), the Rules provide parties with several other methods to conduct their discovery. A party may conduct discovery on the other party by written or oral depositions (Fed. R. Civ. P. 30, 31); by means of serving interrogatories (Fed. R. Civ. P. 33); by requesting the production of documents, ESI, and other tangible things and the inspection of any land or property under the party's possession, custody, or control (Fed. R. Civ. P. 34); by serving a party a request for admissions (Fed. R. Civ. P. 36); or, in certain cases, by performing a physical or mental examination on a party (Fed. R. Civ. P. 35). As regards interrogatories and requests for production, absent the parties' agreement to the contrary, the receiving party must either respond or object to said requests within thirty days after being served with them. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A).

Any discovery request or response or objection thereto must be signed by at least one attorney of record in the attorney's own name or by the party personally, if unrepresented. Fed. R. Civ. P. 26(g)(1). The signature certifies that:

> . . . to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: . . . (B) with respect to discovery a request, response, or objection, it is (i) consistent with these rules and warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

*Id.* In addition, an interrogatory must be answered by the person to whom it is directed, and if directed to a corporation, partnership, association, or government agency, by any officer or agent thereof. Fed. R. Civ. P. 33(b)(1)(B). On top of the Rule 26(g)(1) certification, the answers must be signed by said person under oath, and an attorney must sign any objections as well. Fed. R. Civ. P. 33(b)(3)-(5).

When one party fails to comply with a discovery request, the requesting party may move the Court to order or compel compliance under Fed. R. Civ. P. 37. Specifically, a party may move to compel an answer to an interrogatory made under Rule 33 or the production of documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Depending on whether the motion is granted or denied, the Court may, in appropriate circumstances, order the losing party, its attorney, or both to pay the prevailing party's reasonable expenses incurred in making or opposing the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A)-(B). The Court may

also issue a protective order under Rule 26(c) if a party opposing such motion prevails. Fed. R. Civ. P. 37(a)(5)(B).

Protective orders serve to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). To warrant a protective order, the movant must show good cause. *Id.* "The 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 959, 959-60 (D.C. Cir. 1999)). The protective order may take the form of any of the eight options provided for in subparagraphs (A) through (H) of Rule 26. Fed. R. Civ. P. 26(c)(1)(A)-(H). The trial court enjoys "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## III. Discussion

As per the EEOC's March 13, 2026, status report, there are eight requests for production of documents and four requests for interrogatories that remain in dispute: Document Requests No. 4, 6, 7, 14, 16, 27, 28, and 33; and Interrogatories Nos. 3, 4, 7, and 8. **ECF No. 40** at 1. Besides the individual requests, there are three overarching issues that the EEOC brings to the Court's attention. First, the EEOC highlights that several of its document requests entailed the collection of ESI, but maintains that defendants' collection efforts were unsupervised by counsel and demonstrably incomplete. **ECF No. 23** at 5-6; **ECF No. 40** at 3. Second, the EEOC contends that

defendants failed to object to many of the document requests and therefore waived any objection they may have had to these. **ECF No. 23** at 7; **ECF No. 40** at 3. Third, the EEOC complains that the interrogatory responses lacked the required verification signature under Fed. R. Civ. P. 33(b)(3), as they were not subscribed under oath. **ECF No. 23** at 11; **ECF No. 40** at 7-8. The EEOC further argues that defendants' attempt to cure this omission by providing a general, handwritten verification and signature requires further confirmation that the signature is that of Abdullah Yassin, given his deposition testimony that he had his attorney sign the previous answers. **ECF No. 40** at 7.

The Court will address the waiver and verification arguments first. Then, the Court will analyze whether the EEOC's contentions as to defendants' responsiveness and self-collection efforts merit any type of relief.

**A. Waiver of objections.**

The EEOC maintains that defendants failed to object to Document Requests Nos. 4, 6, 7, 14, and 16, as well as to Interrogatories Nos. 3, 4, and 7. Defendants' response is to suggest that there is no time limit for them to raise an objection: "The plaintiff doesn't go into specifics as to what constitutes an 'on time' objection, probably because the plaintiff raised its objections three months after receiving answers to its interrogatories and requests for production." **ECF No. 26** at 2. In a tangential retort, defendants go on to attack the EEOC's own conduct in responding to their own discovery requests. *Id.*

Defendants' latest "iteration" of its answers to the interrogatories were provided to the Court by the EEOC at its instruction. *See* **ECF Nos. 45, 46, 46-11, 46-12, 46-13**. The EEOC represented that defendants' original responses were served on May 25, 2025, but are not on record with the Court. **ECF No. 46** at 3 n.1. In its motion, the EEOC states unambiguously that defendants did not object to Interrogatories Nos. 3, 4, and 7. **ECF No. 23** at 11. The EEOC's discovery deficiency letter and conferral summary attached to its motion to compel make no mention of any specific objection to any interrogatories. *See* **ECF No. 23-1, 23-2**.

Even though the EEOC's representations may be thought of as one-sided descriptions of the discovery dispute, one would expect a party charged with waiving discovery objections to rebut the contention with zeal and vigor—and evidence of non-waiver, if available. Defendants did not do so. They failed to develop and support any argument that they in fact timely raised objections to the EEOC's interrogatories. They also failed to press any substantive objection they may have raised in response to the motion to compel. And unfortunately for them, no amount of "whataboutism" spares them from the risk of waiver. Both responses and objections to interrogatories and document requests are due within thirty days of their receipt, absent an agreement between the parties to extend this period. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). As regards interrogatories, the plain text of Rule 33 is dispositive: "The grounds for objecting an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Defendants

make no attempt to excuse their failure to object. Accordingly, the Court considers any objection to the EEOC's interrogatories to be waived.

The situation is slightly different for document requests. Rule 34 contains no equivalent waiver sanction. *See Rosado v. Fondo del Seguro del Estado*, No. CV082264 (GAG-JA), 2011 WL 13209574, at *3 (D.P.R. Mar. 28, 2011); *Wylie v. Stipes*, No. CV 08-1036 (GAG-BJM), 2010 WL 11580051, at *1 (D.P.R. Aug. 18, 2010). It is within the Court's discretion to evaluate a party's reasons, even if untimely raised, for not complying with a document request. *See Brenford Env't Sys., L.P. v. Pipeliners of Puerto Rico, Inc.*, 269 F.R.D. 143, 146 (D.P.R. 2010) (citing *Rivera v. Kmart Corp.*, 190 F.R.D. 298, 300 (D.P.R. 2000)). However, such reasons must be weighty ones, like privilege, and not boilerplate or unspecific. *See id.*, at 146 ("Although it may be possible . . . to find good cause and excuse the failure to timely object, such as on privilege grounds, an objection that a request is 'vague, overly broad and unduly burdensome' is the type of objection that is waived by a party's failure to timely object . . . ." (citing *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988)).

Here, the objections at issue do not involve privilege, and defendants have not shown cause to excuse their failure to timely object to the discovery requests. Nonetheless, the Court observes one inconsistency between the EEOC's motion to compel and the record: contrary to the EEOC's assertion that defendants did not object to Document Request No. 7, defendants did object to producing Khalid Yassin's "salary record." *See* **ECF No. 46-1** at 2. But even then, the

objection is vague, unspecific, and has remained undeveloped. Accordingly, the Court finds defendants' objections to Document Requests No. 4, 6, 7, 14, and 16 to be waived.

**B. Verification of interrogatory answers.**

The EEOC requested that the Court order defendants to confirm Abdullah Yassin's signature in the answers to the interrogatories as his own. **ECF No. 40** at 7-8. Defendants stated in response that they had no issue with providing defendants' signature. **ECF No. 43** at 4. In a later motion, the EEOC expressed that it was "satisfied by the updated verification provisions." **ECF No. 46** at 1. The dispute over verification is therefore moot.

**C. The sufficiency of defendants' self-collection efforts.**

The EEOC claims that defendants' attempt to comply with their discovery obligations was deficient because they did not adequately search for responsive documents. The EEOC points to Abdullah Yassin's admitted failure to preserve ESI "at any time during this litigation or after learning of the charge of discrimination," as well as his failure to review Khalid Yassin's electronic devices. **ECF No. 40** at 1-3. Specifically, Abdullah Yassin is said to have admitted during his February 24, 2026 deposition that "he had not reviewed his own electronic email or text messages or the electronic devices of relevant custodians, including Khalid Yassin, the alleged harasser, for responsive documents. Nor had he directed any of his employees to do so." *Id.*, at 1-2. Further, the EEOC claims that deposition testimony revealed that relevant personnel files and employment-related documents may be stored in the offices of a non-party entity owned and operated by Abdullah Yassin, called Yassin Unlimited Drug Corp. d/b/a Droguería

San Juan. *Id.* One employee and family member of Abdullah Yassin, Samira Yassin-Hernández, referred to this location as the "Central Office." *Id.* The EEOC claims that none of this information, nor the identities of employees "who oversee employment-related documents and files," had been previously disclosed. *Id.*

The EEOC contends that all this casts serious doubt on the veracity of defendants' discovery responses, and requests that "Defendants be required to amend all of their Responses to EEOC's [document requests] to clearly state: (1) whether responsive documents exist; (2) what steps were taken to locate responsive documents; (3) whether any documents are being withheld." *Id.*, at 3. But going further, the EEOC also requests that the Court order Abdullah and Khalid Yassin to turn over their phones for forensic inspection or, alternatively, that defendants be compelled to conduct specific searches for responsive documents and ESI. *Id.* In addition, the EEOC seeks to reopen discovery to, among other things, conduct a forensic inspection targeted to defendants' "systems and custodians reasonably likely to contain information concerning" a revised employee manual produced after Abdullah Yassin's deposition, which purportedly contradicts defendants' prior representations regarding its employment policies. **ECF No. 47** at 12.[1]

For their part, defendants' position is that Abdullah Yassin complied with the discovery request, testified in his deposition that he had not deleted any messages, and stated that he had

[1] Although this is a separate matter with which the Court will deal below, the EEOC contends that the revised manual's surprise production after the closure of discovery further supports its position as to defendants' deficient self-collection efforts. **ECF No. 47** at 2.

no responsive documents. **ECF No. 43** at 1. Defendants further state that the messages used by the EEOC to claim that the production was deficient matched those ultimately produced by them. *Id.* ("The charging party produced the messages she exchanged with Mr. Khalid Yassin, and the messages matched."). And on March 24, 2026, defendants produced a "Messages Search Certification" subscribed by Abdullah Yassin to the effect that he personally supervised Khalid Yassin's search of his cellphone for responsive messages exchanged with Ms. Wilkerson, and further produced three responsive pages. **ECF No. 46-7**. Finally, defendants' attorney argued in response to the motion to compel that directly supervising any search for responsive documents in his client's files would make him a "potential witness" and would be "ethically inappropriate." **ECF No. 26** at 1-2.

**1. "Discovery about discovery"**

What the Court has before it is a dispute about whether it should permit the EEOC to conduct "discovery about discovery." "Discovery on discovery has been described broadly as 'any discovery seeking information regarding a party's preservation, collection, and retention efforts.'" *In re Diisocyanates Antitrust Litig.*, No. 18-1001, 2023 WL 11938951, at *3 (W.D. Pa. Nov. 7, 2023) (quoting *Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2022 WL 19568966, at *1 (N.D. Fla. Nov. 29, 2022)). Although some trial courts have considered these types of discovery requests to be outside the scope of Rule 26(b)(1), others have not. *Compare, e.g., Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017) ("'Discovery on discovery' is not an appropriate topic of discovery and numerous courts have

disallowed such discovery.") *with Vazzo v. City of Tampa*, No. 8:17-CV-2896-T-36AAS, 2018 WL 11344782, at *2 (M.D. Fla. Oct. 25, 2018) ("'Discovery about discovery,' or discovery requests aimed at learning about the opposing parties' process in producing discovery, is permissible.").

In any case, the general structure of the discovery process drawn into the Federal Rules of Civil Procedure strongly implies that such discovery should be the exception, not the rule. "The federal discovery system in some ways resembles an 'honor system,'" where the party seeking discovery "must generally 'rely on the representations of the producing party or its representative that it is producing all responsive, relevant, and non-privileged discovery. . . .'" *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 51 (D. Nev. 2025) (quoting *Han v. Futurewei Techs., Inc.*, No. 11-CV-831-JM JMA, 2011 WL 4344301 (S.D. Cal. Sept. 15, 2011)). Casting doubt on a responding party's efforts to provide full and complete discovery responses is by no means taboo, but anyone attempting to obtain a remedy on that ground must overcome the default assumption of good-faith compliance. This is even more so when the attempted second-order discovery targets a person's electronic systems or devices: "Courts should be cautious to order intrusions into the electronic systems of a party . . . where the request is unduly vague or unsubstantiated, and/or based on one party's skepticism that the opposing party has not produced all relevant information." *Rivera v. Costco Wholesale Corp.*, No. 23-CV-1321 (MAJ)(HRV), 2025 WL 295667, at *3 (D.P.R. Jan. 24, 2025).

### 2. Forensic Inspection of Electronic Devices.

By "forensic inspection," the Court construes the EEOC to be requesting a forensic copy or forensic image of Abdullah and Khalid Yassin's cellphones and of defendants' yet-to-be-determined electronic systems. A forensic copy is generally defined as "an exact copy of an entire physical storage medium (e.g., hard drive, CD, DVD, tape), including all active and residual data and unallocated, or slack, space on the medium." Ronald J. Hedges, Barbara J. Rothstein & Elizabeth C. Wiggins., *Managing Discovery of Electronic Information* 52 (3d ed. 2017). The act of imaging a device is essentially synonymous: "to make an identical copy of the hard drive at the lowest level of data storage . . . [that] will include deleted data, residual data, and data found in hidden portions of the hard drive." *Id.*, at 52-53; *see also Delta T, LLC v. Williams*, 337 F.R.D. 395, 400 (S.D. Ohio 2021) ("A forensic image, or mirror image, of a hard drive replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." (internal citation omitted)).

There is no on-point First Circuit precedent available to guide lower courts in applying Rule 26(b)(1) to this particular type of discovery or expounding on its general propriety or impropriety.[2] However, district courts within the First Circuit have addressed similar disputes under the relevance and proportionality factors. For instance, in *Hardy v. UPR Ground Freight, Inc.*, the U.S. District Court for the District of Massachusetts denied a defendant's motion to

[2] In its motion to reopen discovery, **ECF No. 47** at 8, the EEOC erroneously characterizes *Williams v. Mass. Mut. Life Ins. Co.* as a First Circuit opinion, when it is a non-precedential federal district court decision by a magistrate judge. *See Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144 (D. Mass. 2005).

compel the forensic imaging of the plaintiff's cellphone because (1) the factual predicate for the request—that plaintiff admitted to having exchanged some potentially relevant text messages with other employees—was too speculative to be materially relevant, and (2) that an inspection would not be proportional when weighed against plaintiff's privacy concerns, as defendant had not established that less intrusive methods would be insufficient, that the documents could not be obtained from another person, that the text messages had actually been deleted or lost, or even that the inspection would retrieve them. *Hardy v. UPS Ground Freight, Inc.*, No. 3:17-CV-30162-MGM, 2019 WL 3290346, at *3-4 (D. Mass. July 22, 2019). In *Hardy*, the moving party there justified its request on the plaintiff's purported failure to produce requested documents; specifically, because the plaintiff testified in a deposition that he had exchanged certain text messages with other employees but no longer had those messages. *Id.*, at *2. The Court analyzed the specific information that was being sought under the relevance and proportionality prongs of Rule 26(b)(1):

> When determining whether to grant a motion to compel the forensic imaging of a cell phone or other electronic device, courts have considered whether the examination will reveal information that is relevant to the claims and defenses in the pending matter and whether such an examination is proportional to the needs of the case given the cell phone owner's compelling privacy interest in the contents of his or her cell phone.

*Id.* at *2. Taking the possible relevance of the text messages as a given for purposes of argument, the court nonetheless cautioned:

> Given the sensitive nature of the contents of personal computers or cell phones, however, courts have been wary to grant a motion to compel forensic imaging in

> response to a request for information that has not been shown to be at the heart of a claim or defense in the ongoing litigation.

*Id.*, at *3. It then found that plaintiff's showing of relevance was too meager to "warrant a compelled wholesale imaging of the entire contents of Plaintiff's cell phone . . . ." *Id.* (citing *Ramos v. Hopele of Fort Lauderdale, LLC*, No. 17-62100-CIV, 2018 WL 1383188 (S.D. Fla. Mar. 19, 2018); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645 (D. Minn. 2002)).

In *Williams v. Mass. Mut. Life Inf. Co.*, the same district court also denied a forensic inspection request aimed at confirming "what is at best a highly speculative conjecture" about the existence of a certain e-mail message, based on the moving party's failure to "present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate," and the fact that the responding party had actually performed a forensic search and attested to the accuracy of the results. *Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005). The United States District Court for the District of Maine, in *Coast to Coast Eng'g Servs., Inc. v. Roop*, basically adopted the *Williams* rationale to deny a forensic inspection request, adding the following gloss:

> While inconsistencies or improprieties in a party's discovery responses may justify forensic examination of related computers, *Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 5, 12 (D.D.C. 2009); *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), there must be a "history of incomplete and inconsistent responses to the inquiring party's production requests," *Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *7 (D. Kan. Oct. 31, 2006), before a forensic examination will be allowed. The inquiring party's skepticism that the opposing party has produced all of the documents sought is not sufficient to warrant a forensic examination. *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan.

> Mar. 24, 2006) (citing *McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed.Appx. 822, 831, 2001 WL 536974 at *7 (10th Cir. 2001)).

*Coast to Coast Eng'g Servs., Inc. v. Roop*, No. 2:16-CV-00054-DBH, 2016 WL 6602626, at *1 (D. Me. Nov. 8, 2016) (citation modified).

The Court takes note of the above guidance from its sister courts and will evaluate plaintiff's requests for discovery on the sufficiency of defendants' responses based on their relevance and proportionality, with due consideration to defendants' stated privacy concerns.

**D. Compelled Document Requests and Interrogatories.**

**1. Document Requests No. 4, 6, and 7.**

In Document Request No. 4, the EEOC seeks the production of documents with job descriptions for any position held by Abdullah Yassin, Khalid Yassin, Ms. Wilkerson and others. **ECF No. 23** at 7. In Document Request No. 6, the EEOC seeks production of documents and ESI related to Ms. Wilkerson's employment with defendants. **ECF No. 23** at 7; **ECF No. 46-1** at 6. And in Document Request No. 7, the EEOC seeks documents and ESI related to Khalid Yassin's employment. **ECF No. 23** at 8; **ECF No. 46-1** at 6-7.

Defendant's initial response to these requests was to provide a laconic description of the individuals' respective job duties and a copy of Ms. Wilkerson's employment application and payroll information. **ECF No. 46-4** at 1; **ECF No. 26** at 3. As to Khalid Yassin, defendants' initial response was somewhat vague and not fully responsive. FC#1 labelled him as the floor manager charged with overseeing floor employees' schedule, interviewing potential hires, and helping

when needed. **ECF No. 46-4** at 1. FC#2 said he has never worked at its location and FC#3 said the same, but conceded that he helps out "from time to time." **ECF No. 46-5** at 1; **ECF No. 46-6** at 1. Only his "salary records" were objected to, and only by FC #1. **ECF No. 46-4** at 2. Defendants later represented that there was no personnel file for him because he is a family member that has been employed by defendants for over thirty years; they also noted that he receives a salary. **ECF No. 26** at 3-4. Ultimately, defendants stated that they had "produced what [they] had" and that there were no more responsive documents. **ECF No. 43** at 2.[3] Defendants did not detail or describe their search efforts.

The EEOC seeks to compel supplemental responses from all defendants as to Document Request No. 4, and from FC#1 as to Document Requests No. 6 and 7. **ECF No. 40** at 3-4. The EEOC maintains that Abdullah Yassin's subsequent deposition testimony, however, shows that personnel files and employment-related documents are kept in a previously undisclosed "Central Office" location and that responsive documents could still be outstanding. **ECF No. 40** at 3-4. It requests that the Court compel defendants "to amend their responses to reflect: (1) what steps were taken to locate responsive documents and by whom; (2) whether responsive documents exist, including at the Central Office; and to produce all responsive documents." *Id.*, at 40. Notably, defendants' response to this demand says nothing of documents stored in a

[3] This last representation contrasts with the EEOC's contention that "Defendants have not produced additional documents since" the EEOC's motion to compel. **ECF No. 40** at 4.

"Central Office" and rather just repeats in substance the same position as before: the job descriptions are sufficient, and there are no responsive documents available. **ECF No. 43** at 2.[4]

First, the Court finds that the requests seek relevant information. The claims in this case include allegations that defendants subjected Ms. Wilkerson to a hostile work environment and constructively discharged her after an incident involving Khalid Yassin, the pharmacy manager. The complaint includes allegations that she was never instructed on how to report incidents of sexual harassment, despite defendants having in place a written anti-harassment policy and reporting procedure that named Samira Yassin-Hernández, an employee and family member, as the person to whom they should be reported. *See* **ECF No. 1** at 4-6, ¶¶ 23-24, 33, 38, 41. In their answer to the complaint, defendants denied not having instructed Ms. Wilkerson on the matter. **ECF No. 13** at 3-4, ¶¶ 33, 38, 41. They further denied that any sexual harassment incident occurred and affirmatively alleged that Ms. Wilkerson was not discharged but rather voluntarily abandoned her employment. *Id.*, at ¶¶ 35, 36; *see also id.*, at 6, ¶¶ 8-10. More recently, the EEOC pointed out that Abdullah Yassin's deposition testimony as to Samira Yassin-Hernández's role as point-of-contact for harassment incidents contradicts this narrative. Apparently, she no longer worked for defendants by the time Ms. Wilkerson was employed and could not have been the point of contact for sexual harassment reporting. A revised manual showing Abdullah Yassin as

[4] As to Document Request No. 6, defendants did supplement their production with an employee "timecard" for the date of the alleged incident with Khalid Yassin. **ECF No. 40** at 4; **ECF No. 43** at 2.

the point of contact was subsequently produced, but defendants could not provide a date for the revision. **ECF No. 47** at 3-5. All of which demonstrates the relevance of the requested documents.

In addition, the EEOC contends that defendants are all liable under an "integrated enterprise" theory. *See* **ECF No. 1** at 3-4, ¶¶ 16-27; **ECF No. 23** at 7; *see also* **ECF No. 16** at 2 ("The EEOC further contends that Defendants, who operate multiple pharmacies under the "Farmacia Carimas" name, operate as a single integrated enterprise by virtue of the centralized control of labor relations and operations and thereby retain the requisite number of employees under Title VII."). Defendants deny this. *See* **ECF No. 13** at 2-3, ¶¶ 16, 18, 26-27; **ECF No. 26** at 5; *see also* **ECF No. 16** at 2 ("Yas Caribe, Inc., had less than 15 employees during the relevant period."). For purposes of Title VII, specifically for hostile work environment claims, "[a]n employer's liability depends on the harasser's employment status relative to the victim's . . . ." *Torres-Negrón v. Merck & Co., Inc.*, 488 F.3d 34, 40 (1st Cir. 2007). And "[u]nder the 'single employer' doctrine, two nominally separate companies may be so interrelated that they constitute a single employer subject to liability under Title VII." *Id.*, at 40-41 (citing *NLRB v. Browning-Ferris Indus., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). In order to make this determination, a court must employ the four-factor "integrated enterprise test . . . (1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership." *Id.*, at 42 (citing *Romano v. U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir. 2000)). All four factors need not be present, and the test is applied flexibly with special attention to the control exerted by one entity on the employment decisions of another. *Id.* (citing *Romano*, 233 F.3d at 666; *Pearson v. Component*

*Tech. Corp.*, 247 F.3d 471, 486 (3d Cir. 2001); *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999)).

Given the above, the EEOC's request seeks information that is relevant to its claims, and there is a concrete indeterminacy about who Ms. Wilkerson was supposed to report harassment to in accordance with defendants' policies. Further, documents establishing the respective individuals' job descriptions across all three defendants, if they exist, would be relevant to the integrated enterprise theory and to any affirmative defense raised against it.[5] Defendants' position that a testimonial description of the information sought is sufficient does not address the doubts created over the thoroughness of the search. *See* **ECF No. 43** at 2. That defendants assert that no such documents exist is called into serious doubt by the revelation of the existence of a "Central Office" and the absence of a direct representation by defendants in their Rule 34 responses or in motion practice to the effect that this location has been searched for responsive documents. That location is only accessible to defendants, it is reasonably likely to hold responsive documents, and searching it represents little to no burden or expense to defendants (at least none that has been identified).

Therefore, the motion to compel as to Document Requests No. 4, 6, and 7 is **GRANTED**. Defendants are to search for responsive documents in the "Central Offices" location and shall

[5] In its motion to reopen discovery, the EEOC makes mention of defendants' "affirmative defense under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)." **ECF No. 47** at 1. That refers to a particular defense available to employers against Title VII hostile work environment claims. Whether defendants have raised that claim or not is not before the Court, but no affirmative defense in defendants' answer to the complaint is explicitly labelled as such.

supplement their existing responses accordingly. The supplemental response must include the following: (i) the date of the search, (ii) the categories of documents searched, (iii) the persons assisting in said search, and (iv) the name of the custodians of electronic databases searched. Furthermore, these supplemental responses must comply with Fed. R. Civ. P. 26(g)'s signature and certification requirement, which means that defendants' attorney must have a good basis (i.e., "knowledge, information, and belief formed after a reasonable inquiry") to certify these responses.

**2. Document Requests No. 14 and 16.**

In Document Request No. 14, the EEOC seeks defendants' communications ("all phone records, text messages, emails, instant messages (chats), voice mails, and other Documents") relating or referring to Ms. Wilkerson, her allegations of sexual harassment, any complaints made by her, the Protective Order sought by her, the termination of her employment, EEOC Charge No. 515-2023-00493, or any complaint of harassment against Khalid Yassin at Farmacias Carimas. **ECF No. 46-8** at 8-9. Document Request No. 16 similarly calls for the production of these types of communications and other ESI sent and received by "anyone performing human resources duties on behalf of Defendant and any Manager to whom Ms. [Wilkerson] was subordinate . . . ." *Id.*, at 9-10.

The EEOC seeks to compel Document Request No. 14 as to all defendants and Document Request No. 16 as to FC#1. **ECF No. 40** at 5-6. Subject-wise, these documents are relevant to the sexual harassment incident at the center of the EEOC's complaint and to establishing defendants'

response thereto. FC#1 initially did not object to their production but only produced one text message, and FC#2 and FC#3 stated that they had no responsive documents and that Ms. Wilkerson did not work for them. **ECF No. 46-4** at 2; **ECF No. 46-5** at 2; **ECF No. 46-6** at 2. FC #1 further referred the EEOC to its previous production in response to the EEOC's administrative investigation. **ECF No. 46-4** at 2.[6] Defendants also recently produced the "Messages Search Certification" subscribed by Abdullah Yassin in which additional responsive messages of communications between Khalid Yassin and Ms. Wilkerson were found. **ECF No. 46-7**. The EEOC, however, is not satisfied by this certification because it is "severely limited in scope." **ECF No. 46** at 1. As to Document Request No. 14, it insists on a forensic inspection of Abdullah and Khalid Yassin's cellphones or, alternatively, a supervised search of these for responsive communications and all text messages exchanged between Abdullah and Khalid Yassin within specific date ranges. **ECF No. 40** at 5. As to Document Request No. 16, it insists on running searches in the cellphones and email accounts of four employees who perform administrative and human resources functions in the "Central Office" location. *Id.*, at 5-6.

The Court recalls that the basis for the EEOC's insistence on these requests is that defendants' initial production did not include communications between Khalid Yassin and Ms.

---

[6] That the EEOC may already have responsive documents is not a valid reason to refuse a document request. "Courts have held that a responding party is required to produce documents in its possession, custody, or control regardless of whether the requesting party is already in possession of the requested documents." *Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016). Moreover, defendants' discovery obligations arise under the Federal Rules of Civil Procedure, which may be different from those regulating document production in the relevant administrative proceeding. Finally, while there is likely to be some overlap with what defendants were required to produce in the administrative proceeding, the fact that documents have been previously produced does not excuse a party from its obligations under Fed. R. Civ. P. 34(b)(2)(E)(i).

Wilkerson that the EEOC knew existed, given that it had independently obtained from Ms. Wilkerson a copy of an additional responsive WhatsApp message dated November 3, 2022. **ECF No. 23** at 6, 8; **ECF No. 23-3**. By itself, a missing text message normally does not warrant an intrusive inquiry on how defendants searched for responsive documents. "The fact that a party has located a single relevant document that the adversary failed to produce hardly demonstrates that the search was flawed." *Agerbrink v. Model Serv. LLC*, No. 14CIV7841(JPO)(JCF), 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017). However, the EEOC also pointed to Abdullah Yassin's February 24, 2026, deposition testimony as evidence of his failure to (i) preserve and collect documents related to the harassment incident, (ii) search his own electronic email and text messages or the electronic devices of relevant custodians (including Khalid Yassin), and (iii) direct any of his employees to do so. **ECF No. 40** at 1-2, 5. That much is borne out by the deposition excerpts attached to the EEOC's motion to reopen discovery. *See* **ECF No. 47** at 9-10; **ECF No. 47-8** to **47-10**.

Defendants, on the other hand, counter that Khalid Yassin's deposition testimony shows that he produced all messages with Ms. Wilkerson, that he never erased any message, and that "they are all there." **ECF No. 43** at 1. Defendants also argue that the few messages produced by Khalid Yassin match those produced by Ms. Wilkerson, and that Abdullah Yassin testified that he has no responsive messages and had not deleted anything. *Id.* The EEOC does not contest the accuracy of defendants' description of Khalid Yassin's deposition testimony, but argues that it

does little to account for other messages that may exist on the topics included in the document requests beyond those exchanged directly with Ms. Wilkerson.

Defendants' initially deficient response to the document request and Abdullah Yassin's deposition testimony as to the inadequacy of his search raise substantial doubts as to defendants' compliance with their discovery obligations. The Court notes that the EEOC's September 19, 2025, conferral letter included reasonable search terms for defendants to run in their electronic devices. *See* **ECF No. 23-2** at 1-2. These terms cover the entire scope of Document Requests No. 14 and 16 and not just messages exchanged with Ms. Wilkerson, which is apparently what defendants asked Khalid Yassin to search for. *See* **ECF No. 43** at 1 ("During his deposition, Mr. Khalid Yassin testified that he was told to produce all messages with [Ms. Wilkerson], which he did. . . . [Ms. Wilkerson] produced the messages she exchanged with Mr. Khalid Yassin, and the messages matched."). Defendants did not describe what, if any, search terms they used to find responsive documents, and Requests No. 14 and 16 seek much more than just messages exchanged with Ms. Wilkerson. Abdullah Yassin's subsequent "Messages Search Certification" does little to certify that defendants searched for all topics included in the document requests.

As to Attorney Mihailovich's compliance with Rule 26(g)(1)'s reasonable inquiry requirement, his position warrants discussion. As mentioned above, Rule 26(g)(1) imposes on the signer of a discovery request, response, or objection a duty to perform a "reasonable inquiry." Fed. R. Civ. P. 26(g)(1); *see U.S. Equal Emp. Opportunity Comm'n v. Atl. Prop. Mgmt. Corp.*, No. 1:24-CV-10370-AK, 2026 WL 686430, at *2 (D. Mass. Mar. 11, 2026) ("A certification

imposes an affirmative duty to make a reasonable inquiry into the factual and legal basis for discovery positions.”). In the case of a response to a document request, this duty falls squarely on the attorney, whereas interrogatory responses must be signed by both the attorney and the person who answers them. Fed. R Civ. P. 26(g)(1), 33(b)(5). The required inquiry does not call for perfection, *Agerbrink*, 2017 WL 933095, at *5, and the standard against which it is measured is an objective one “similar to the one imposed by Rule 11.” *Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 499 (D. Mass. 2022) (citing to 1983 Advisory Committee Notes to Rule 26(g)).

In defendants’ opposition to the motion to compel, Attorney Mihailovich stated as follows in response to the EEOC’s concerns about defendants’ self-collection efforts:

> It is my understanding that being with a witness while s/he searches for the requested records, explaining to the witness what is requested, verifying that the information is pertinent to the request, and asking the witness to produce everything he has, complies with a “reasonable inquiry” requirement. Otherwise, a counsel’s active search for those records will make a counsel a potential witness if a client misses a text message or for any other reason. I believe that my discussing every question or discovery request with my witnesses, while they are answering, producing documents, or giving instructions to their secretaries or assistants to look for and produce exactly what was asked for, is involvement that complies with Rule 26(g). . . . And how would I remember what I saw? How would I know if they are showing me everything, or if messages were deleted, or if they have changed telephones? . . . Still, I believe it is inappropriate for me to get involved in the witnesses’ telephones, computers, etc., beyond what I already have.

**ECF No. 26** at 1-2.[7]

---

[7] It is not altogether clear whether Attorney Mihailovic is literally describing his supervision efforts in this statement or is just making a hypothetical/rhetorical point. The Court will construe it in the former sense for his benefit.

The Court first notes that neither supervising nor assisting a clients' document search converts an attorney into a witness in a case. In fact, such supervision may be required in appropriate circumstances:

> While an attorney need not supervise every aspect of a client's document production, the attorney is responsible for coordinating the client's discovery efforts so that responsive documents are located and produced. An attorney makes a "reasonable inquiry" under Rule 26(g) if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. Ultimately, what is reasonable is a matter for the Court to decide on the totality of the circumstances.

*Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 707 (D.N.J. 2015) (internal citation omitted). Indeed, the existence, relevance, and discoverability of ESI is one such circumstance that counsels in favor of attorneys exercising diligent supervision over their clients' efforts to comply with discovery requests:

> Attorneys have a duty to oversee their clients' collection of information and documents, especially when ESI is involved, during the discovery process. Although clients can certainly be tasked with searching for, collecting, and producing discovery, it must be accomplished under the advice and supervision of counsel, or at least with counsel possessing sufficient knowledge of the process utilized by the client. Parties and clients, who are often lay persons, do not normally have the knowledge and expertise to understand their discovery obligations, to conduct appropriate searches, to collect responsive discovery, and then to fully produce it, especially when dealing with ESI, without counsel's guiding hand.

*Equal Emp. Opportunity Comm'n v. M1 5100 Corp.*, No. 19-CV-81320, 2020 WL 3581372, at *3 (S.D. Fla. July 2, 2020). An attorney's failure to adequately guide and supervise a client's search for responsive ESI may run afoul of Rule 26(g). *See id.*, at *2 ("The relevant rules and case law establish that an attorney has a duty and obligation to have knowledge of, supervise, or counsel

the client's discovery search, collection, and production. . . . [A]n attorney cannot abandon his professional and ethical duties imposed by the applicable rules and case law and permit an interested party or person to 'self-collect' discovery without any attorney advice, supervision, or knowledge of the process utilized."); *Da Veiga v. Santander Bank*, No. CV 22-11364-NMG, 2024 WL 5668161, at *3 (D. Mass. Dec. 13, 2024) (same).

In this case, such supervision was objectively warranted. Abdullah Yassin testified that he did not perform an adequate search for responsive documents, even when his attorney represented that he was "with a witness while s/he searches for the requested records, explaining to the witness what is requested, verifying that the information is pertinent to the request, and asking the witness to produce everything he has . . . ." **ECF No. 26** at 1-2. While it is true that "[i]n making the inquiry, the attorney may rely on assertions by the client," that is only "as long as that reliance is appropriate under the circumstances." 1983 Advisory Committee Notes to Rule 26(g). A discovery request for ESI in a party's cellphones and computer systems is a circumstance that triggers an attorney's need to, at a minimum, understand how a client stores and uses ESI and how and where the client is searching for responsive documents.

As officers of the court, attorneys have a duty to make legally sound arguments and good-faith factual representations to the court. If an attorney does not have sufficient information to know whether his client is being accurate or not in a discovery response, particularly one

involving ESI, this duty requires that he or she inquire deeper.[8] "[T]he ethical rules now require attorneys to be competent with technologies such as ESI." *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 492 n.2 (N.D. Ill. 2018) (citing Model Rules of Pro. Conduct r. 1.1, comment 8 (A.B.A.)). Attorney Mihailovich should have assumed a more active role in guiding defendants' search beyond what he described in the opposition to the motion to compel. At the very least, he should have inquired into how and where the searches were being made so that he could give a reasonably informed certification of the thoroughness of what sources were and were not searched. Ideally, he would have discussed and run the keyword searches proposed by the EEOC or a mutually agreed upon version of them. Judging from the subsequent interactions of the parties that are on record, defendants' position has been to engage in piecemeal corrections to their deficient responses and only when specific deficiencies are revealed by the EEOC's efforts. This is not the way.

Having said all this, discovery must be proportionate. A forensic inspection of Abdullah and Khalid Yassin's cellphones carries with it the risk of intrusion into private matters falling outside the scope of discovery. The burden imposed by such inspection, moreover, will likely outweigh its benefits. While there is certainly a well-founded suspicion that an adequate search was not carried out, and that defendants thus failed to comply with their discovery obligations, that does not necessarily mean that defendants are withholding responsive documents. After all,

---

[8] *Limone v. United States* presents an admittedly extreme example: when attorneys receive documents that have been redacted by their clients and do not know what has been redacted, they cannot responsibly certify that the factual basis for a disclosure is compliant with Rule 26(g)(1). *Limone v. United States*, 815 F. Supp. 393, 398 (D. Mass. 2011).

defendants represented that they had no messages between Abdullah and Khalid Yassin about Ms. Wilkerson or the alleged sexual harassment incident (*see* **ECF No. 26** at 4; **ECF No. 43** at 1), and the messages subsequently produced by defendants matched those in possession of the EEOC. In other words, there is no indication that, as of today, defendants have willfully withheld responsive documents or incurred in spoliation—only that they have not adequately searched for documents that may exist relating to the alleged sexual harassment incident at the center of the EEOC's complaint. Therefore, the Court will take the forensic inspection off the table for now, but will **GRANT** the EEOC's alternative request to compel defendants to run supervised searches for responsive documents.

Accordingly, the motion to compel Document Requests No. 14 and 16 is **GRANTED IN PART, DENIED IN PART**. As to <u>Document Request No. 14</u>, defendants are **ORDERED** to perform an attorney-supervised search of both Abdullah Yassin and Khalid Yassin's cellphones for responsive communications (email, text messages, call logs, etc.) across all relevant e-mail and messaging platforms/applications for the following periods: (i) October 1, 2022 through November 30, 2022 (employment period; date of incident; protective order issued); (ii) December 10, 2022 through December 15, 2022 (before and after protective order hearing on December 13, 2022); (iii) August 14, 2023 through August 31, 2023 (following charge filing with EEOC); (iv) September 23, 2024 through September 30, 2024 (following filing of complaint); (v) February 1, 2026 through February 28, 2026 (before and after depositions).

As to Document Request No. 16, FC#1 is **ORDERED** to perform an attorney-supervised search of the cellphones and email accounts of the employees identified by the EEOC as having human resources functions (Helen, Lillian, Lucero, and Elizabeth, last names unknown)[9] for responsive communications (email, text messages, call logs, etc.) for the following time periods: (i) October 1, 2022 through November 30, 2022 (employment period; date of incident; protective order issued); (ii) December 10, 2022 through December 15, 2022 (before and after protective order hearing on December 13, 2022); (iii) August 14, 2023 through August 31, 2023 (following charge filing with EEOC); (iv) September 23, 2024 through September 30, 2024 (following filing of complaint); (v) February 1, 2026 through February 28, 2026 (before and after depositions). The supplemental response relating to these searches must include the following: (i) the date of the searches, (ii) the categories of documents searched, (iii) the persons assisting in said searches, and (iv) the name of the custodians of any electronic database that is searched. Furthermore, these supplemental responses must comply with Fed. R. Civ. P. 26(g)'s signature and certification requirement, which means that defendants' attorney must have a good basis (i.e., "knowledge, information, and belief formed after a reasonable inquiry") to certify these responses.

[9] The Court assumes—because no such argument to the contrary was ever made—that defendants have the requisite possession, custody, or control of these electronic devices under Rule 34. *Cf. Buena Vibra Grp., LLC v. Santiago*, No. CV 23-1414 (PAD-HRV), 2026 WL 1153669, at *4 (D.P.R. Apr. 29, 2026) ("[L]egal ownership or actual physical possession of a document is not required to deem a document within the possession, custody, or control of a party; documents are considered to be under a party's control when that party has the right, authority or ability to obtain those documents upon demand." (internal quotation marks omitted)).

**3. Document Requests No. 27 and 33.**

In Document Request No. 27, the EEOC seeks the production of several types of documents relating to defendants' financial status from October 1, 2020, to the present, namely: tax returns, financial statement, annual reports, profit and loss statements, balance sheets, cash flow statements, retained earnings statements, statements of assets and liabilities, and number of employees. **ECF No. 46-1** at 12-13. In Document Request No. 33, the EEOC asked for "all corporate organizational documents for any of your Farmacia Carimas locations, as well as for any juridical entity identified in your response to Interrogatory No. 5." *Id.*, at 14.

The EEOC represented in its motions to the Court that defendants produced: (i) federal tax returns for years 2020-2023 for FC#1 and FC#2, and 2020-2024 for FC#3; (ii) annual report filing receipts with the Secretary of State; (iii) FC#1's Articles of Incorporation filed in 1988; and (iv) audited financial statements for years 2021-2023. **ECF No. 23** at 9-10; **ECF No. 40** at 6-7. However, the EEOC continues to maintain that this is insufficiently responsive to Document Requests No. 27 and 33, justifying the relevance of these documents on its integrated enterprise theory and request for punitive damages. **ECF No. 23** at 9-10; **ECF No. 40** at 6-7. As to Document Request No. 27, the EEOC insists on the production of the documents listed in their request: audited financial statements, annual reports, profit & loss statements, balance sheets, cash flow statements, retained earnings statements, statements of assets and liabilities, and number of employees. As to Document Request No. 33, the EEOC seeks additional "organizational documents" such as bylaws, organizational actions, initial board meetings, and operating

agreements. **ECF No. 23** at 10. Given the partial production, the EEOC want defendants to certify their search efforts for responsive documents. **ECF No. 40** at 6-7; **ECF No. 46** at 2.

Defendants objected to Document Request No. 27 based on relevance. **ECF No. 46-4** at 3; **ECF No. 46-5** at 3; **ECF No. 46-6** at 3. Despite their subsequent production of responsive documents, defendants maintained their objection, conceding only that these documents may be relevant for post-judgment discovery. **ECF No. 26** at 4-5.[10] In addition to the documents the EEOC acknowledges defendants produced, they produced a detailed spreadsheet reflecting the number of employees. **ECF No. 43** at 3. Defendants stated that they have produced all they had while also complaining that the EEOC failed to specify what documents from the list included in Document Request No. 27 it understood were still outstanding. *Id.* Specifically regarding FC#2 and FC#3, defendants contended that their documentation is not relevant, although it is unclear whether they nonetheless produced responsive documents. **ECF No. 26** at 4-5. As to Document Request No. 33, defendant did not object and only stated that they were looking for responsive documents. *Id.*, at 5.[11] Their latest position is that they produced all they have. **ECF No. 43** at 3.

Reviewing the above, the Court finds that defendants' response to Document Request No. 27 is largely sufficient, but still requires supplementation. That is because, while defendants claim to have no additional responsive documents, they also claim ignorance of what other

[10] Defendants made no objection or argument outside of lack of relevance and failed to respond to the EEOC's overture to discuss the entry of a protective order. **ECF No. 23** at 10.

[11] Defendants' answer to Interrogatory No. 5, referenced in Document Request No. 33, is not at issue.

documents could be missing. The request is very straightforward and includes a list of documents: for defendants to fully comply with their obligations, they should state whether they are in possession, custody, or control of responsive profit and loss statements, balance sheets, cash flow statements, retained earnings statements, and statements of assets and liabilities. As to their objections, the Court finds them unavailing. The documents for all defendants are specifically relevant to the integrated enterprise theory, as discussed above in relation to the objections to Document Requests No. 4, 6, and 7. Regarding punitive damages, defendants failed to meaningfully develop their bald assertion that this is a matter relevant only for post-judgment discovery.

In relation to Document Request No. 33, the Court finds that the organizational documents for all defendants (FC#1, FC#2, and FC#3) are relevant to the EEOC's integrated enterprise theory.[12] Because it is not clear from defendants' representations that, notwithstanding its objection, it has searched for and produced all responsive documents in its possession, the Court will require them to submit a certification to the EEOC.

Accordingly, the Court **GRANTS** the motion to compel in relation to <u>Document Requests No. 27 and 33</u>. Defendants shall either supplement their production or certify that no responsive additional responsive documents exist for either of the three companies.

[12] Defendants' contention that they have no additional documents implies that there are no bylaws, no annual board meeting minutes, and no organizational action documents to indicate an independent corporate governance structure for each corporation. If this is true, that makes the EEOC's case for an integrated enterprise more likely than if these documents existed and told a different story.

**4. Document Request No. 28.**

In Document Request No. 28, the EEOC requested the production of documents that "support, explain, or relate any and all Affirmative Defenses plead in your Answer to the Complaint (ECF 13), with specific reference to the Affirmative Defense(s) to which it relates." **ECF No. 46-1** at 13; **ECF No. 46-2** at 13; **ECF No. 46-3** at 13. FC#1 responded that "Employee lists and corporate documents go to lack of jurisdiction. For the rest, we are still in a discovery phase." **ECF No. 46-4** at 3. FC#2 and FC#3 responded by simply stating "Attached." **ECF No. 46-5** at 3; **ECF No. 46-6** at 3. In response to the motion to compel, defendants represented that they had produced "what they had for each affirmative defense," but subsequently bookended their position with "at this point." **ECF No. 26** at 5. Most recently, on March 19, 2026, defendants stated in that "[c]urrently, the[y] have nothing else to produce." **ECF No. 43** at 3.

Under Fed. R. Civ. P. 37, "a party fail[ing] to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The deadline to conclude discovery elapsed on March 30, 2026. *See* **ECF No. 30**. Therefore, whatever documents or information that could support defendants' affirmative defenses that were not timely produced will not be usable at trial or summary judgment. The Court deems that enough at this point. The motion to compel production of further responsive documents or a certification in relation to <u>Document Request No. 28</u> is **DENIED**.

**5. Interrogatories Nos. 3, 4, and 7.**

Interrogatories No. 3, 4 and 7 ask defendants to identify their ownership and organizational structures. Interrogatory No. 3 essentially asks each defendant to identify the owner of their respective pharmacy locations as well as the persons supervising and managing them. Interrogatory No. 4 directly asks for the organizational structure of each pharmacy, including ownership, management, departments, job titles, and itemized duties. And Interrogatory No. 7 asks the straightforward question of who the owner of their businesses is.

The EEOC seeks to compel defendants to describe the ownership structure of each defendant corporation and identify the individual owner of each and percentages of ownership. **ECF No. 23** at 11. Defendants respond that "the individual owners' names for each company's shares, along with the number of shares, were objected to on the grounds of relevance." **ECF No. 26** at 5-6. They go on to object to providing this information as to FC#2 and FC#3 because the EEOC has "no evidence" and because the interrogatory is "abusive" and a "fishing expedition." *Id.*, at 5.

The Court has already ruled that defendants' objections were waived for not being timely asserted. But even taken them as properly raised, the Court would find them unavailing. Defendants' ownership and organizational structures are plainly relevant to the EEOC's integrated enterprise theory because they would be probative to establishing whether its four-factor test is met (in particular, the common ownership factor). *Torres-Negrón*, 488 F.3d at 41-42. Defendants have not made any serious legal or factual argument to counter the application of

the integrated enterprise theory. They pointed only to the fact that Ms. Wilkerson was ignorant of which pharmacy location belonged to which defendant. **ECF No. 26** at 5; **ECF No. 26-3**. But it is not clear why her ignorance of this fact precludes the EEOC from alleging and attempting to establish, via discovery requests, that defendants operate as an integrated enterprise for purposes of Title VII employer liability. Defendants' ownership is a topic that fits comfortably within the scope of discovery.

In response to the EEOC's March status report, defendants claimed that Abdullah Yassin already testified as to the ownership of the corporations in his deposition. **ECF No. 43** at 4. Setting aside whether that testimony (which is not on record) would be sufficiently responsive to the interrogatory, defendants do not present any authority for the proposition that this somehow absolves them of their obligation to answer interrogatories as per Fed. R. Civ. P. 33(b).

Accordingly, the Court **GRANTS** the motion to compel as to Interrogatories No. 3, 4, and 7. Defendants are to supplement their respective responses to these interrogatories as per Fed. R. Civ. P. 33(b) to describe the ownership structure of each defendant corporation and identify the individual owner of each and percentages of ownership.

**6. Interrogatory No. 8.**

In Interrogatory No. 8, the EEOC seeks the identity of individuals responsible for procurement and distribution in defendants' businesses. FC#1 objected to this interrogatory as

irrelevant and on the basis of "privilege of being a business secret." **ECF No. 46-11** at 7.[13] FC#2 and FC#3 both responded by providing Abdullah Yassin's name and objecting to the rest of the interrogatory as irrelevant and onerous. **ECF No. 46-12** at 1; **ECF No. 46-13** at 1. In their opposition to the motion to compel, defendants elaborated on the burden that compliance would produce, stating that "there are anywhere between 50 and 100 suppliers to the pharmacies" and that "the defendants would have to stop the business and use their few employees to inventory thousands of products sold in the pharmacies and to determine who supplies them, when they are paid, and from which account, every receipt, every delivery, bill of lading, and so on." **ECF No. 26** at 6. The EEOC does not explain why this information is relevant to its claims or why compelling defendants to undertake the search would be proportional to the needs of the case. With regard to this interrogatory, the Court finds that both relevance and proportionality factors favor defendants. Accordingly, the motion to compel answers to Interrogatory No. 8 is **DENIED**.

**E. Request to reopen discovery.**

Finally, the EEOC requests that the Court allow the reopening of discovery to permit it to explore the provenance of a revised version of their employee manual that was produced after the discovery deadline and as a consequence of Abdullah Yassin's deposition under Fed. R. Civ. P. 30(b)(6). **ECF No. 47**. Defendants maintain that the alleged inconsistencies concerning the

[13] Defendants did not develop their "business secret" privilege objection in their filings to the Court. They also failed to ground their claim to privilege under either federal or Puerto Rico law. "[I]n general . . . the party asserting a privilege 'bears the burden of showing that the privilege applies.'" *United States v. Breton*, 740 F.3d 1, 9 (1st Cir. 2014) (quoting *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012)). Defendants failed at this basic step, so the Court will not analyze whether any "business secret" privilege applies.

origins of the revised manual were cleared up during Abdullah Yassin's deposition, that any remaining inconsistency "may be addressed at trial," and that ordering a forensic inspection of defendants' computer systems would "raise substantial privacy and confidentiality concerns" regarding non-party customers' health information. **ECF No. 48** at 2-3.

The EEOC's arguments are well-taken. In general, defendants' search for responsive documents fell below expectations. The existence of the revised manual should have been previously disclosed, and it should have been promptly produced. Moreover, Abdullah Yassin's lack of certainty as to the circumstances surrounding the revision casts doubt over whether it was in place at the relevant time or, at its worst, whether it is a recent fabrication. And the emergence of this document, whatever its weight, prejudices the EEOC's case.

Considering the parties' respective positions and the discussion above regarding the propriety of forensic inspection requests, the Court is of the view that one is appropriate under the circumstances. There is only one document at issue—the revised employee manual—and the open question is the date of its creation (and to a lesser extent, who created it). The Court finds that an inspection limited to searching for documents or ESI tending to establish when and by whom the revised employee manual was created is relevant and proportionate. A forensic protocol specifically targeting these subjects and safeguarding defendants' data can be established with relative ease, largely eliminating concerns of intrusion into defendants' customer data.

Accordingly, the EEOC's motion to reopen discovery at **ECF No. 47** is **GRANTED IN PART, DENIED IN PART**. The parties are **ORDERED** to confer and prepare a proposed forensic protocol, which must include, at a minimum: (i) agreed-upon search terms; (ii) a list of computer devices, systems, and custodians that are reasonably likely to have responsive information; (iii) a timeframe in which to run the searches; (iv) an agreed-upon third party to conduct the search; (v) a procedure for analyzing results; and (vi) a process for how non-responsive documents or ESI will be treated. If after a good-faith effort no agreement can be reached as to any provision, the parties shall file a joint motion with their respective position as to each dispute. The Court reserves its prerogative to forgo the forensic inspection and instead grant the EEOC's alternative request for relief under Fed. R. Civ. P. 37(c)(1) to exclude the revised employee manual and related testimony from evidence.[14]

## IV. Conclusion

For the reasons provided, the EEOC's motion to compel at **ECF No. 23** is **GRANTED IN PART, DENIED IN PART**, as follows:

- Defendants' objections to Document Requests No. 4, 6, 7, 14, and 16, and to Interrogatories No. 3, 4, and 7, are deemed waived.
- The EEOC's request to order defendants to supplement their verification to their answers to interrogatories is moot.
- With regard to Document Requests No. 4, 6 and 7, the motion is **GRANTED**. Defendants are to search for responsive documents in the "Central Offices" location and shall supplement their existing responses in accordance with this Opinion and Order.

[14] If, as a result of the inspection, the EEOC wants to conduct additional limited discovery, it may move the Court for leave to do so.

- With regard to Document Requests No. 14 and 16, the motion is **GRANTED**. Defendants are **ORDERED** to perform an attorney-supervised search in accordance with this Opinion and Order.
- With regard to Document Requests 27 and 33, the motion is **GRANTED**. Defendants are **ORDERED** to either supplement their production or certify that no responsive additional responsive documents exist for either of the three companies.
- With regard to Document Requests 28, the motion is **DENIED**.
- With regard to Interrogatories No. 3, 4 and 7, the motion is **GRANTED**. Defendants are **ORDERED** to supplement their respective responses to these interrogatories as per Fed. R. Civ. P. 33(b) to describe the ownership structure of each defendant corporation and identify the individual owner of each and percentages of ownership.
- With regard to Interrogatory No. 8, the motion is **DENIED**.

In addition, the EEOC's motion to reopen discovery at **ECF No. 47** is **GRANTED IN PART, DENIED IN PART**. The parties are **ORDERED** to confer and submit their proposed forensic inspection protocol in accordance with this Opinion and Order by no later than **September 30, 2026**. Failure to do so may result in sanctions.

The Court reserves any determination that it may be required to make on how reasonable expenses are to be allocated in relation with these motions. Fed. R. Civ. P. 37(a)(5)(C).

**SO ORDERED**.

At San Juan, Puerto Rico, on this 2nd day of September 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**